EDWARD M. FARNSWORTH *vs.* JAMES F. MULLEN.

Suffolk.    March 14, 1895. — June 21, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Memorandum added to Promissory Note — Presentment and Demand — Exceptions.*

A contention which is not shown by the bill of exceptions to have been made in the Superior Court is not open in this court.

It is no defence to an action on a promissory note by an indorsee against an indorser, that there was no sufficient presentment to and demand upon the maker, who no longer resided or had a place of business at the place designated in the note, if the evidence shows that due diligence was used by the notary to find the maker.

CONTRACT, against James F. Mullen, upon the following promissory note:

" $1,000.    Boston, Feb. 2, 1893.    Four months after date, I promise to pay to the order of James F. Mullen one thousand dollars, payable at        .  Value received.    L. H. McDermott. [In pencil] 76 Chauncy Street."

Indorsements: " James F. Mullen, Theodore Pinkham, Congress Street [in pencil], C. M. Farnsworth, F. & Hoyt [in pencil]."

At the trial in the Superior Court, without a jury, before *Dunbar,* J., the defendant requested the judge to rule that, upon all the evidence, the plaintiff was not entitled to recover, because there was no evidence of demand on the maker, and no legal excuse for the omission thereof. The judge declined so to rule, and ruled, as matter of law, that, there being no dispute as to the facts relating to the question of diligence, due diligence had been used to find the maker, and found for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*W. O. Kyle,* for the defendant.

*W. F. Kimball,* for the plaintiff.

BARKER, J. This case turns upon the effect to be given to the act of the defendant, Mullen, the payee and first indorser of the note, who, upon transferring it to Pinkham, the second indorser, and being inquired of by him as to the address of McDermott, the maker, replied, "I will fill his address out," and thereupon wrote upon the face of the note, below the maker's signature, the words " 76 Chauncy Street," and delivered the note with his own blank indorsement to Pinkham. The note was afterwards indorsed in blank by Pinkham and transferred to the plaintiff, who in turn indorsed it in blank and transferred it to a bank, its holder at maturity.

The maker of the note had no knowledge of the memorandum. He lived in Boston, was a bookkeeper, and at the maturity of the note his place of business was at 88 Essex Street and his residence 16 Scotia Street. The note was dated February 2, 1893, and matured on June 5, 1893. The maker had been employed as a bookkeeper in an office on the fourth floor of 76 Chauncy Street until October, 1892, when he left that office. When he began to work at 88 Essex Street, or to live at 16 Scotia Street, does not appear. The only demand of payment was made by the notary at the office at 76 Chauncy Street, on June 5, the last day of grace, shortly after two o'clock in the afternoon, and the notices of dishonor were sent before three o'clock on the same afternoon. The maker was not at

76 Chauncy Street when the demand was made, and then had no place of business there.

The contention that the notices were sent too soon is not open, because it is not shown by the bill of exceptions to have been made in the Superior Court, and the defendant is now restricted to the questions which his bill of exceptions shows were there raised and ruled upon. We therefore have no occasion to consider whether the memorandum placed by Mullen upon the note estops him from contending that the note was not dishonored when the notices were sent.

The effect of a memorandum upon the face of a promissory note has been often considered. See *Heywood* v. *Perrin*, 10 Pick. 228; *Perkins* v. *Franklin Bank*, 21 Pick. 483; *Demond* v. *Burnham*, 133 Mass. 339; *Saunderson* v. *Judge*, 2 H. Bl. 509; *Exon* v. *Russell*, 4 M. & S. 505; *Price* v. *Mitchell*, 4 Camp. 200; *Williams* v. *Waring*, 10 B. & C. 2; *Trecothick* v. *Edwin*, 1 Stark. 468; *Woodworth* v. *Bank of America*, 19 Johns. 391. Following the decision in *Demond* v. *Burnham*, the effect to be given to the words "76 Chauncy Street" in the present case is to treat them as a part of the date of the note, and as raising a presumption, not conclusive, that the maker resided or had a place of business at 76 Chauncy Street. *Smith* v. *Philbrick*, 10 Gray, 252. 3 Kent Com. 96. *Demond* v. *Burnham, ubi supra.* A demand made either at the residence or the place of business of the maker is of course good when no place of payment is stated in the note. But if at the maturity of the note the maker no longer resides or has a place of business at the place designated in the note, and that be known to the holder, diligence must be used to find him. 3 Kent Com. 96, 97. *Smith* v. *Philbrick, ubi supra.*

In the present instance the memorandum was added to the note by the defendant Mullen, before its maturity and before it came into the possession of the plaintiff, or of the bank which held it when it became due, and which was charged with the duty of demanding payment. Having thus added the memorandum, Mullen cannot be allowed to say that the holder shall act as if there were no such memorandum. Looking at the circumstances stated in the bill of exceptions, we think the presiding justice was right in ruling that due diligence had been used to find the maker of the note.

The memorandum gave the holder a right to suppose that the maker's place of business was at 76 Chauncy Street. Having this information, it was not incumbent upon the holder to make inquiries before the day of maturity. The notary used due diligence in going with the note, shortly after two o'clock in the afternoon of the last day of grace, to the place indicated in the memorandum as the maker's place of business for the purpose of demanding payment. If upon his arrival there he had found any circumstance to indicate that the maker of the note did not have a place of business there, it would have been his duty to prosecute further inquiries. But we find nothing in the circumstances which should have informed him that the office at 76 Chauncy Street was not the place of business of the maker of the note. The replies which the notary received there justified him in believing that the information given by the defendant in the memorandum was correct.* The ruling that due diligence was used was right.

*Exceptions overruled.*

---

* The notary testified as follows: " I received the note from Mr. Patch, the cashier of the Shoe and Leather Bank, June 5, shortly after two o'clock, after the bank had closed. I went immediately to 76 Chauncy Street, stepped into the elevator and told the boy I wanted to go to McDermott's office. He stopped at the fourth floor, I should say, and pointed to an office. There was a name on the door (what name I do not remember), but I don't think McDermott's name was on the door. I went into the office the elevator boy directed me to, and there saw a gentleman sitting at a desk. I inquired if McDermott was in, and he replied, ' No, he is out.' I asked him what time he would come back, and he said he did not know. I presented the note and asked if he had any funds to pay it; and he replied there was no one there to pay it. I left the office and went to Mr. Farnsworth's, and asked him if he had any better address for McDermott than 76 Chauncy Street. He asked me to call on James F. Mullen (the defendant) and ask him where McDermott was to be found. I went to the store of James F. Mullen & Co., and inquired for Mr. Mullen, as I did n't see him. I knew who Mr. Mullen was by sight, — had a passing acquaintance with him. I was told that Mr. Mullen was out. I handed the bookkeeper the note, and asked him if he knew McDermott, and asked him where he was to be found. He looked at the note, and said, '76 Chauncy Street.' I asked whether Mr. Mullen would be in, and he said he did n't know whether he would or would not. I then went directly to my own office, and when I got there I looked in the latest Boston Directory (1892) and did not find the name of the maker. I telephoned to the store of J. F. Mullen & Co., and asked if Mr. Mullen had been in, and the reply was that he had not been in."